IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VALERIE MBU OKPU; and EVIL REIMAR PAUCAR VELIZ,<br>Petitioners,<br>v.<br>JULIO HERNANDEZ, Seattle Field Director Enforcement and Removal Operations Immigration and Customs Enforcement; *et al.*,<br>Respondents. | No. 2:26-CV-03111-SAB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Before the Court is Petitioners' Petition for Writ of Habeas Corpus, ECF No. 1. Petitioners are represented by Peyton K. Jacobsen and Sam Sueoka. Respondents are represented by Peter H. Clark.

**Petitioner Valeria Mbu Okpu**

Petitioner Okpu is a citizen of Cameroon who entered the United States on August 9, 2024. Border Patrol agents detained Petitioner for several weeks before he passed a credible fear interview and was released on humanitarian parole. On September 28, 2025, Petitioner was charged with driving under the influence and entered into a diversion program. Petitioner pleaded no contest sometime in November 2025, and ICE increased the frequency of his check-in requirements.

Petitioner indicates that he missed court on one occasion because his mother was extremely ill, which resulted in him being removed from the diversion program. He was then sentenced to 24 months of probation.

On June 22, 2026, Petitioner Okpu appeared at an ICE check-in appointment, and was detained without notice or an opportunity to be heard. He indicates his removal proceedings are ongoing.

**Petitioner Evil Reimar Pauzar Veliz**

Petitioner Pauzar Veliz is a citizen of Peru who entered the United States in 2022. After turning himself in to immigration officials, he was detained for approximately a week before being released under an Order of Release on Recognizance (OREC). In June 2025, Petitioner was arrested for a DUI. He pled guilty on July 21, 2026, and was instructed to attend a probation appointment on August 3, 2026. At the appointment, his probation officer began to go over his probation requirements and what classes needed to be completed. Near the end of the meeting, ICE agents entered the office and detained Petitioner without prior notice or an opportunity to be heard. He indicates his removal proceedings are ongoing.

**Habeas Petition**

Both Petitioners were discretionarily released into the community, violated a condition of their release, and were subsequently re-detained without prior notice or an opportunity to be heard.

Respondents assert the Petitions should be denied because the Petitioners are subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), as they were both detained at the border and their subsequent releases on humanitarian parole and OREC did not alter Respondents' statutory authority to detain Petitioners.

In determining whether a petitioner who was released and later re-detained is subject to mandatory or discretionary detention, courts may consider the government's treatment of the petitioner and the context of the decision to release

them. *Pantoja Sanchez v. Hernandez*, No. 2:26-CV-00884-TMC, 2026 WL 1506130, at *2 (W.D. Wash. May 29, 2026). The discretionary decision to release Petitioners either on humanitarian parole or under an OREC supports the conclusion that they are both subject to discretionary detention under 8 U.S.C. § 1226. *Aguilar-Graterol v. Warden/Facility Adm'r, Nw. Det. Ctr.*, No. 2:26-CV-00997-LK, 2026 WL 1162705, at *4 (W.D. Wash. Apr. 29, 2026); *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). Further, release under an OREC is authorized under § 1226(a)(2)(B), and noncitizens released on an OREC that are later re-detained are subject to § 1226. *Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115-16 (9th Cir. 2007). Petitioners have no criminal convictions that subject them to mandatory detention under § 1226(c), so they are subject to discretionary detention under § 1226(a).

When determining whether a petitioner held under § 1226(a) has received appropriate due process, courts in this District apply the three-factor *Mathews* test. *See e.g., Rana v. Bondi*, No. 2:26-CV-00244-TL, 2026 WL 472800, at *3 (W.D. Wash. Feb. 19, 2026). Those three factors are (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards," and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976). When evaluating the third factor, Courts must analyze the governmental function involved, as well as the fiscal and administrative burdens that additional or substitute procedures would require. *Id.* at 335.

A finding in favor of an immigration petitioner under *Mathews* requires immediate release in order to restore the status quo. *See e.g., Rana*, 2026 WL 472800, at *4–5; *Camacho*, 2026 WL 1243459 at *8; *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *12 (W.D. Wash. Apr. 9, 2026);

*Kirykovich v. Hernandez*, 26-CV-695, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) ("Because the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [the petitioner] to the conditions that existed before his unlawful detention."). The status quo is "the last uncontested status which preceded the pending controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (citation omitted).

The *Mathews* factors weigh in favor of Petitioners. First, Petitioners have a protected liberty interest in remaining free from custody, especially since they were released into the community in 2024 and 2022, and prior to their re-detention they both built lives for themselves, maintained employment, and created communities. Second, the risk of deprivation of liberty is high: it does not appear that Respondents conducted a hearing at the outset of Petitioners' re-detention to determine an individualized risk of flight or danger. Third, Respondents' interest in re-detaining Petitioners without a hearing is minimal: while holding a hearing would have cost time and money, those costs are outweighed by Petitioners' liberty interests.

As to whether Petitioner should be released, the Court notes that Petitioners' re-detention was the impetus for the pending controversy. Therefore, Petitioners should be released as that was their status prior to re-detention. *Tanner*, 316 F.2d at 809. Furthermore, having a bond hearing at this stage would not cure the underlying constitutional violation and immediate release is the only way to return the status quo.

Accordingly, **IT IS HEREBY ORDERED**:

1. Petitioners' Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**.

2. **Within one (1) day of the date of this Order, Respondents shall release Petitioners from immigration detention.** Within two (2) days of the date

of this Order, Respondents shall file a certification that Petitioners have been released.

3. Respondents shall not re-detain Petitioners without providing pre-detention notice and affording Petitioners a hearing unless detention becomes statutorily mandated.

4. At any re-detention hearing, Respondents shall bear the burden to show by clear and convincing evidence that Petitioners are a flight risk or a danger to the community.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 15th day of October 2026.

Stan Bastian

Stanley A. Bastian
United States District Judge